# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PROSPECT EAST HOLDINGS, INC., and PROSPECT CHARTERCARE, LLC d/b/a Our Lady of Fatima Hospital | )<br>)<br>)<br>) |
| | ) Case No. |
| Plaintiffs, | )<br>)<br>) |
| v. | )<br>) |
| UNITED NURSES & ALLIED PROFESSIONALS, INC. | )<br>)<br>)<br>) |
| Defendants. | )<br>)<br>)<br>) |

## COMPLAINT AND PETITION TO VACATE ARBITRATION DECISION IN PART

Plaintiffs Prospect East Holdings, Inc. and Prospect CharterCARE, LLC d/b/a Our Lady of Fatima Hospital ("Prospect"), by and through its undersigned attorneys, hereby submit this Complaint And Motion To Vacate Arbitration Decision In Part ("Complaint"), and states as follows:

## INTRODUCTION

1.  This Complaint arises under Section 301(a) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a) ("LMRA") and the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* ("FAA") and seeks to vacate, set aside, and declare null and void, in part, the Arbitration Opinion and Decision ("Arbitration Decision") issued by Arbitrator Craig Overton on September 19, 2018 in an arbitration between Prospect and United Nurses & Allied Professionals, Inc. ("UNAP").

## PARTIES

2. Plaintiff Prospect East Holdings, Inc. ("Prospect East") is a corporation organized and existing under the laws of the State of Delaware with a principal office located at 3415 S. Sepulveda Blvd., 9th Floor, Los Angeles, CA 90034, and principal place of business in Los Angeles, California. Prospect East is the majority owner of Fatima Hospital, the facility at issue in this dispute.

3. Plaintiff Prospect CharterCARE, LLC is a limited liability company owned by Prospect East that operates Fatima Hospital, the facility at issue in this dispute, and which has a principal office located at 3415 S. Sepulveda Blvd., 9th Floor, Los Angeles, CA 90034. Prospect East and Prospect CharterCARE, LLC are referred herein collectively as "Prospect."

4. Fatima Hospital is an acute care hospital in Providence, Rhode Island and provides across-the-board medical care including, but not limited to, endoscopy, imaging, laboratory, emergency, psychiatry, rehabilitation, and surgical services.

5. UNAP is a corporation organized and existing under the laws of the State of Rhode Island with its principal office at 375 Branch Avenue, Providence, Rhode Island, 02904. UNAP serves as a regional health care labor union representing technologists, support staff, and other health care workers employed in Rhode Island, Vermont, and Connecticut.

6. UNAP represents a bargaining unit of service employees at Fatima Hospital.

## JURISDICTION & VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the Parties are citizens of different states. Therefore, there is complete diversity of citizenship.

8. This Court has subject matter jurisdiction pursuant to 301 of the LMRA, 29 U.S.C. § 185 and 28 U.S.C. § 1331 and 1337.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because UNAP is a resident of the State of Rhode Island and resides in this judicial district. In addition, the arbitration hearing that resulted in the Arbitration Decision that is the subject of this Complaint occurred in Johnston, Rhode Island.

## FACTUAL BACKGROUND

**The Parties' Collective Bargaining History**

10. In June 2014, Prospect began operating Fatima Hospital as a joint venture with CharterCARE Community Board ("CCCB").

11. In 2015, UNAP successfully organized a bargaining unit of over 400 service employees at Fatima Hospital ("Bargaining Unit") and began negotiating their first Collective Bargaining Agreement ("CBA") for the Bargaining Unit.

12. The Parties spent over a year negotiating the CBA and in those negotiations discussed the breadth of Prospect's right to change its health plans from year-to-year.

13. On or around September 23, 2016, the Parties entered into a Memorandum of Understanding ("MOU"), which, in part, governed the health insurance benefits that Prospect was to provide to the Bargaining Unit for the length of the CBA's duration.

14. The MOU adopted the following language, in relevant part:

> Health and Welfare Plans: Employees shall participate in the CharterCare Health and Welfare benefit plans (medical, dental, vision, disability, life, etc). The employer may modify the plan designs or any other aspects of the benefit plans, provided such modifications also apply to non-represented employees.
> …
> Nothing herein shall preclude the Employer from making additional changes to carrier, eligibility, coverage, benefits or cost

3

> of the insurance programs, provided such changes provide benefits that are substantially equivalent to those in effect as of the date of this Agreement.

15. The MOU's provisions concerning Health Insurance additionally contained cost sharing requirements and contribution caps.

16. The CBA codified the MOU's health and welfare plan language in Article 16.2 and included, upon UNAP's request, the boilerplate phrase "as specified herein" in the language cited in Paragraph 14 as follows (emphasis added):

> Health and Welfare Plans. Employees shall participate in the CharterCare Health and Welfare benefit plans (medical, dental, vision, disability, life, etc,) **as specified herein**. The Employer may modify the plan designs or any other aspects of the benefit plans, provided such modifications also apply to non-represented employees, **as specified herein.**

The CBA is attached hereto at **Exhibit 1.** *See* **Exhibit 1** at 27. The CBA maintained the "substantially equivalent" standard articulated the in second CBA provision quoted herein in Paragraph 14.

17. Prior to the CBA's execution, Prospect informed UNAP that the "as specified herein" language was meant only to reference the benefits language the Parties agreed to in the MOU. The Parties fully executed the CBA on October 30, 2016.

18. Article VI of the CBA contains, and contained during the relevant period, the grievance and arbitration procedure for disputes arising between Prospect and UNAP. This procedure provides that if the Parties are not able to satisfactorily settle a grievance, the matter may be presented before an impartial arbitrator.

19. Article 6.6 of the CBA is clear that the arbitrator is powerless to "directly or indirectly to award or dete[rm]ine, any change in, modification or alteration of, addition to, or detraction from, any of the provisions of" the CBA.

**The Wellness Incentive**

20. Since 2015, and at all relevant times, Prospect has administered a tobacco incentive as part of its Wellness Program. The tobacco incentive imposes a $50.00 per month tobacco surcharge on the medical premiums of employees who identify as tobacco users. UNAP has never grieved the tobacco incentive.

21. In March 2017, Prospect introduced a wellness incentive as part of the Wellness Program, which, like the tobacco incentive, assessed a $50.00 per month lower medical premium in 2018 on Bargaining Unit members and non-represented employees who completed three wellness steps in 2017 than those who did not participate in the wellness incentive.

22. On or around February 7, 2018, Prospect announced that Bargaining Unit members and non-represented employees would be required to acquire 100 "wellness points" by participating in certain wellness activities in order to qualify for the wellness incentive during the 2019 benefits year.

**The Spousal Eligibility Rule**

23. Soon after acquiring Fatima Hospital, Prospect introduced a rule whereby an employee's spouse would be eligible to participate in Prospect's medical benefit plans only if the spouse was not eligible for another group health plan through the spouse's employer ("Spousal Eligibility Rule"). This rule was intended to apply to all health insurance plans offered by Prospect.

24. For the 2017 and 2018 benefit years, Prospect offered a single dental plan and a single vision insurance plan to its employees. These plans remained virtually identical across these two benefit years.

25. During Open Enrollment for the 2018 plan year, Prospect announced that it was expanding the Spousal Eligibility Rule to its dental and vision plans. This modification was consistent with the Spousal Eligibility Rule's initial intent. The Spousal Eligibility Rule's expansion applied equally to both Bargaining Unit and non-union employees.

**The Arbitration Proceeding And Arbitration Decision**

26. On or around September 11, 2017, UNAP submitted the first grievance underlying the Arbitration Decision ("Grievance I"). Grievance I contested Prospect's introduction of the wellness incentive. Prospect denied Grievance I throughout the grievance process.

27. On or around October 2, 2017, UNAP submitted the second grievance underlying the Arbitration Decision ("Grievance II"). Grievance II described the grievance, in its entirety, as: "The change in the health insurance plan violates Article 16.2 and other related articles." UNAP claims that Grievance II contested, in relevant part, the expansion of the Spousal Eligibility Rule to govern a non-employee spouse's eligibility for Prospect's dental and vision plans. Prospect denied this portion of Grievance II throughout the grievance process.

28. On or around February 13, 2018, UNAP submitted the third grievance underlying the Arbitration Decision ("Grievance III"). Grievance III described the grievance, in its entirety, as "Article 16 and any other Related Articles." UNAP claims that Grievance III contested the modifications that Prospect made to the wellness incentive as they impacted the *anticipated* 2019 medical insurance premium rates. Prospect denied Grievance III throughout the grievance process.

29. On July 13, 2018, Arbitrator Overton conducted an arbitration hearing in Johnston, Rhode Island, wherein Grievances I, II and III were consolidated for review.

30. The Arbitration Decision wrongfully concludes that the case rests on ambiguous language in the CBA. Arbitrator Overton found that "it is clear to this Arbitrator that it was Mr. DiNicola who introduced 'as specified herein' to Mr. LaBella, the Employer's Chief Negotiator." The Arbitration Decision is attached hereto at **Exhibit 2**. *See* Exhibit 2 at 26. Mr. DiNicola served as UNAP's Chief Negotiator during the Parties' negotiations underlying the CBA. *Id.* at 17. Regardless, the Arbitration Decision improperly concludes that: "it was incumbent upon Mr. LaBella to insure that his intent as to what these words meant be included in the language of the [CBA] (JX #1) which would then be dispositive of the issue and would not leave the matter in doubt." *See id.* at 26.

31. By reaching the finding described in Paragraph 29, the Arbitration Decision impermissibly imposed responsibility for providing clear CBA language entirely on Prospect, despite finding that the Union drafted the contested, determinative language. *See id.*

32. The Arbitration Decision also found that the wellness incentive, as initially introduced, violated Article 16.2 of the CBA because it constituted a "cost of the insurance program" that exceeded the out-of-pocket maximum cap set forth in Article 16.2. *See* Exhibit 2 at 27. This finding disregards the CBA's clear requirement that "[t]he Employer may modify the plan designs or any other aspects of the benefit plans, provided such modifications also apply to non-represented employees, as specified herein." *See* Exhibit 1 at 27.

33. Non-represented employees are subject to the same wellness incentive as the Bargaining Unit. Thus, the Arbitration Decision's finding described in Paragraph 31 herein does not arise from the CBA's express terms, and in fact contradicts the CBA's express language.

34. The Arbitration Decision additionally finds that Prospect violated Article 16.2 of the CBA when it modified the wellness incentive in February 2018 to affect medical insurance

7

premiums in 2019 because "a charge of $50.00 per month *would* amount to $600.00 per year which violates the specific language contained in the Collective Bargaining Agreement." *See* Exhibit 2 at 28 (emphasis added).

35. Non-represented employees are subject to the same wellness incentive as the Bargaining Unit. Moreover, at the time of the Arbitration Hearing, the insurance premiums for 2019 were not yet in effect and thus cannot violate the CBA's terms concerning cost sharing. As such, the Arbitration Decision's finding described in Paragraph 33 herein does not arise from the CBA's express terms.

36. The Arbitration Decision further finds that Prospect's expansion of the Spousal Eligibility Rule to its dental and vision plans violated the CBA's language, which the Arbitrator quoted as: "Nothing herein shall preclude the Employer from making additional changes … provided such changes provide benefits that are <u>substantially equivalent</u> to those in effect as of the date of this Agreement." *See* Exhibit 2 at 30. The Arbitration Decision omits CBA language concerning eligibility. The CBA language, in its entirety, states: "Nothing herein shall preclude the Employer from making additional changes to carrier, **eligibility**, coverage, **benefits** or cost of the insurance programs, provided such changes provide **benefits** that are substantially equivalent to those in effect as of the date of this Agreement." Exhibit 1 at 29 (emphasis added). The CBA's language distinguishes between the terms "eligibility" and "benefits." By ignoring this distinction, the Arbitration read the word "eligibility" into the word "benefits" in a manner that impermissibly altered the CBA's express terms.

37. UNAP presently demands that Prospect comply with the terms of the Arbitration Decision.

## FIRST CAUSE OF ACTION
**(Seeking the Court to Vacate, Set Aside, and Declare Null and Void the Award)**

38.     Prospect re-alleges Paragraphs 1 through 37.

39.     The CBA is binding upon the Parties.

40.     By holding that Prospect violated the CBA when it introduced a wellness incentive, announced changes to the wellness incentive, and extended the Spousal Eligibility Rule to medical insurance is not enforceable under the LMRA and/or the FAA because it fails to draw its essence from the CBA and because the Arbitrator ignored the terms of the CBA and instead dispensed his own brand of industrial justice.

41.     Because the Arbitration Decision does not draw its essence from the Agreement and is the result of the Arbitrator's own brand of industrial justice, it should be vacated and set aside.

42.     Prospect will be damaged if it is forced to comply with the terms of the Arbitration Decision.

**RELIEF REQUESTED**

WHEREFORE, Prospect respectfully request that the Court enter judgment vacating, setting aside, and declaring null and void, in part, the September 19, 2018 Arbitration Opinion and Decision of Arbitrator Overton, along with any other relief that the Court deems necessary and proper.

December 12, 2018

Respectfully submitted,

*/s/ Erika J. Lindberg*
Erika J. Lindberg, Esq. (RI Bar #8056)
Baker Hostetler LLP
811 Main Street, Suite 1100
Houston, Texas 77008
Telephone: 713.751.1600 (main)
Facsimile: 713.751.1717
elindberg@bakerlaw.com

*Counsel for Plaintiffs Prospect East Holdings, Inc. and Prospect CharterCARE, LLC d/b/a Our Lady of Fatima Hospital*