UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| PROSPECT EAST HOLDINGS, INC., and PROSPECT CHARTERCARE, LLC, <br> Plaintiffs, <br><br> v. <br><br> UNITED NURSES & ALLIED PROFESSIONALS, INC., <br> Defendant. | C.A. No. 18-671-JJM-PAS |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

This case involves the Court's review of a labor arbitrator's decisions arising from a Collective Bargaining Agreement ("CBA"). Plaintiffs Prospect East Holdings, Inc. and Prospect CharterCARE, LLC ("Prospect") and Defendant United Nurses & Allied Professionals ("UNAP") filed cross-motions for summary judgment. The parties have stipulated that the issues underlying their dispute are pure questions of law and thus are right for summary judgment. The Court finds that Prospect has not established a case for vacatur either under the Federal Arbitration Act (9 U.S.C. § 10(a)(4)) ("FAA") or under the common-law manifest-disregard grounds.

I. FACTS

Prospect owns and operates Our Lady of Fatima Hospital in North Providence, R.I. Prospect and UNAP entered into a CBA that remained in force between October 30, 2016 and October 29, 2018. Prospect claims that a Memorandum of Understanding ("MOU") containing contract language material to this dispute preceded the CBA by several months.[1]

The CBA contains two sections important here. Article VI sets forth procedural rules for grievances and arbitration for disputes arising under the CBA. ECF 1-1 at 16–18. Specifically, Part 6.6 authorizes an arbitrator to interpret and apply specific provisions of the CBA. *Id.* at 18. Consistent with the FAA, Part 6.6 limits an arbitrator's authority when she would modify any term of the CBA instead of merely interpreting it.

The second important section of the CBA is Article XVI: Insurance. *Id.* at 36–39. Part 16.2 permits Prospect to modify medical and dental plan designs or other aspects of the benefit plans, provided the changes apply equally to non-represented employees "as specified herein." *Id.* at 36. Part 16.2 also limits out-of-pocket maximum increases to no more than $400 per year. Finally, Part 16.2 allows Prospect to make additional changes to "carrier, eligibility, coverage, benefits, or cost of the insurance programs, provided such changes provide benefits that are substantially equivalent to those in effect as of the date of" the CBA.

---

[1] UNAP disputes the relevance of the preceding MOU to the instant dispute. As UNAP brought all the relevant grievances under the CBA, not the preceding MOU, the Court's analysis does not reference the MOU.

2

In 2017, Prospect introduced a wellness incentive program that reduced insurance premium co-pays for participants by $50 monthly in exchange for program participation. Prospect subsequently modified the qualification criteria for the program, maintaining the $50 reduction in co-pays as a reward for participation. Separately, in late 2017, Prospect announced that it would limit spousal eligibility for vision and dental insurance to match the existing limitations in place for medical insurance.

UNAP filed one grievance against Prospect for each of these three actions. Those grievances were consolidated into a single arbitration proceeding before an Arbitrator, when the parties stipulated to resolution of two questions: "Did [Prospect] violate the CBA when it made changes to the employee medical, dental, and vision coverage and introduced and changed a wellness plan? If so, what shall be the remedy?" ECF 7 at 17.

At arbitration, the Arbitrator found for UNAP on all three counts. First, he concluded that the phrase "as specified herein" introduced a degree of ambiguity into Prospect's ability to change insurance coverage. ECF 1-2 at 26. He went on to conclude that the imposition of a $50 surcharge on employees not participating in the wellness incentive program flouted Part 16.2's prohibition on annual out-of-pocket cost increases more than $400 per year. ECF 1-1 at 37, ECF 1-2 at 28. The Arbitrator next struck the change to spousal insurance eligibility because, in his estimation, it was impermissible for a third party to a CBA to participate in changes to insurance coverage. ECF 1-2 at 30. In the alternative, he found that elimination of spousal

3

eligibility for vision and dental coverage was also invalid because it did not comport with Part 16.2's requirement of "substantially equivalent" benefits. *Id.* at 31.

## II. STANDARD OF REVIEW

Summary judgment is warranted when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The Court must look to the record and view all the facts and inferences in the light most favorable to the non-moving party. *Audette v. Town of Plymouth*, 858 F.3d 13, 20 (1st Cir. 2017).

When evaluating "cross-motions for summary judgment, the standard does not change; [courts] view each motion separately and draw all reasonable inferences in favor of the respective non-moving party." *Bonneau v. Plumbers & Pipefitters Local Union 51 Pension Tr. Fund ex rel. Bolton*, 736 F.3d 33, 36 (1st Cir. 2013) (quoting *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013)). The Court must determine whether either party is entitled to judgment as a matter of law based on the undisputed facts. *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 77 (1st Cir. 2009).

## III. DISCUSSION

Within the First Circuit, there are two sources of authority to vacate an arbitrator's award: statutory and common-law. The first source of authority is the Federal Arbitration Act at 9 U.S.C. § 10(a). Section 10(a) provides four grounds for vacatur:

> "(1) where the award was procured by corruption, fraud, or undue means;

4

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

To these four statutory grounds the First Circuit has added a common-law grounds for vacatur when the arbitrator displays "manifest disregard" for the law. *Mountain Valley Prop., Inc. v. Applied Risk Servs., Inc.*, 863 F.3d 90, 94–95 (1st Cir. 2017) (citing *Advest, Inc. v. McCarthy*, 914 F.2d 6, 8 (1st Cir. 1990)).[2] Manifest disregard occurs when an arbitrator ignores the plain language of a contract or knowingly disregards law applicable to the dispute. *Advest*, 914 F.2d at 9.

The First Circuit has stated, "great deference remains the general mode of approach to judicial review of arbitral awards." *Cytyc Corp. v. DEKA Prods. Ltd.*, 439 F.3d 27, 33 (1st Cir. 2006). "Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). This highly deferential standard is rooted in the Labor Management Relations Act's preference that labor disputes be resolved privately when the parties have agreed to

---

[2] The First Circuit suggested in *Ortiz-Espinosa v. BBVA Securities of Puerto Rico, Inc.*, 852 F.3d 36, 46 (1st Cir. 2017) that the manifest-disregard doctrine was merely a judicial gloss on the FAA given the Supreme Court's decision in *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008).

do so. *Id.* at 37. Accordingly, "[i]t is not enough for petitioners to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).

Prospect's memorandum in support of its Motion for Summary Judgment makes claims for vacatur only under § 10(a)(4) or, alternatively, the manifest-disregard doctrine. Prospect therefore does not assert the other grounds for vacatur.

### A. Statutory Authority

Under the FAA's grant of statutory authority, a reviewing court may overturn an arbitrator's award if the arbitrator exceeded his powers delegated by the CBA. *See* § 10(a)(4). Examples of the United States Supreme Court and First Circuit vacating an award in such a circumstance are rare. In *Coady v. Ashcraft & Gerel*, a lawyer and the firm he quit submitted to arbitration of a dispute over his departure. 223 F.3d 1, 4 (1st Cir. 2000). The arbitrator awarded the lawyer additional compensation plus fees and expenses and the First Circuit found that the arbitration panel had exceeded its authority in two ways: first, by finding facts contrary to those stipulated by the parties; and second, by calculating additional compensation for the lawyer when the contract did not authorize an arbitrator to provide such a remedy.

A second example is *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* 559 U.S. 662 (2010). There, an arbitrator found that the parties' contract authorized class arbitration despite its silence on the topic. The Supreme Court held that the arbitrator lacked the authority to fashion a new rule of law to deal with a legal issue when the parties had not authorized him to do so, and thus that vacatur was proper.

6

In contrast, there are many examples of courts affirming arbitrators' decisions for having been within their authority. In *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013), facts like those in *Stolt-Nielsen S.A.* were presented to the court: two parties bound to arbitration disagreed about whether their contract permitted class arbitration. Unlike in *Stolt-Nielsen*, however, where an arbitrator exceeded his authority by finding a rule where the contract was silent, the arbitrator in *Sutter* construed language in the contract to support his conclusion that it allowed class arbitration. In the words of Justice Kagan, "[u]nder § 10(a)(4), the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all. Because he did, [he] therefore did not 'exceed his powers' . . ."

Similarly, in *Raymond James Financial Services, Inc. v. Fenyk*, an arbitrator did not exceed his authority when he merely interpreted the language of an agreement. 780 F.3d 59 (1st Cir. 2015). In *Fenyk*, the district court vacated an arbitration award because the panel had incorrectly applied Florida law and had ignored a statute of limitations in Florida law. The First Circuit reversed and reinstated the arbitration award, stating that even clear legal errors do not merit vacatur under § 10(a)(4) so long as the arbitration panel has the authority to apply the law in question. Because the panel did have that authority, vacatur was improper.

Here, the Arbitrator's award relied exclusively on interpretation of the contract and of evidence presented, and thus cannot be vacated under § 10(a)(4) authority. In

its Motion for Summary Judgment, Prospect asserts that the Arbitrator improperly and inconsistently interpreted the CBA's provisions to strike the wellness incentives. ECF 16-1 at 10–11, 12–13. Interpretation of the CBA, however, is the Arbitrator's domain under Supreme Court and First Circuit precedent. Even erroneous interpretation is not grounds for vacatur. In the instant case, the Arbitrator interpreted the introduction and change of the wellness plan to constitute an increase in out-of-pocket expenses impermissible under Part 16.2 of the CBA. He also concluded that Part 16.2's requirement that benefits be "substantially equivalent" required that the changes in spousal eligibility for vision and dental benefits be struck down. As in *Sutter* and *Fenyk*, the Arbitrator based his conclusions on what he interpreted to be ambiguous language in the CBA, however erroneous those conclusions might have been. The Court therefore does not vacate the award under § 10(a)(4) authority because the Arbitrator did not exceed his authority.

B. Manifest-Disregard Doctrine

In the alternative, a district court may exercise its inherent, common-law authority to vacate an arbitration award if it shows manifest disregard for the clear language of the CBA or the applicable law. *Advest*, 914 F.2d at 9. This ground for vacatur is appropriate when applicable law does not permit a certain result, the arbitrator knew of the controlling law, and the arbitrator still disregarded it. For example, in *Kashner Davidson Securities Corp. v. Mscisz*, the First Circuit found the National Association of Securities Dealers (NASD) Code, expressly incorporated into the parties' CBA, would have permitted claims that an arbitrator dismissed. 531 F.3d

8

68, 76–79 (1st Cir. 2008). The arbitrator's actions constituted manifest disregard because he knew of the NASD Code but ignored it in dismissing the claims. Another example is *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34 (1st Cir. 1985). There, the First Circuit upheld a district court's vacatur of an arbitration award because the arbitrator had disregarded clear and unambiguous language in the contract, exhibiting manifest disregard for it.

In contrast, the court in *Cytyc Corp. v. DEKA Products Ltd.* found that manifest disregard was not present where a state statute would have required a different result than the one the arbitrator reached, but the record lacked proof that the arbitrator willfully disregarded the rule. 439 F.3d 27, 35 (1st Cir. 2006). In *Cytyc Corp.*, the First Circuit thus showed that a party must prove that the arbitrator willfully ignored applicable law, not merely that the arbitrator erred.

Proof of manifest disregard of the law is not present here. Prospect makes a loose argument that the Arbitrator's reading of the CBA was in manifest disregard of the law because it contradicted Part 16.2. In fact, the argument Prospect presents is one of an error in contractual interpretation because there is no clear language in the CBA that demands the result Prospect desires. *See* ECF 1-1 at 36–38. This contention is thus appropriately analyzed under the § 10(a)(4) framework explored above. While Prospect presents an argument about the sufficiency of Ms. Jennifer Seifert's testimony as it relates to the spousal eligibility rule, the Arbitrator also

9

struck the rule on contractual interpretation grounds and it is therefore unnecessary to reach this issue.

## IV. CONCLUSION

Plaintiff Prospect has failed to make out a case for the Court to vacate the Arbitrator's award under either statutory or common-law authority. The Arbitrator found for UNAP on all three grievances based on his interpretation of the CBA's terms, and thus did not exceed his power under § 10(a)(4). He also did not exhibit manifest disregard for the plain language of the contract or any applicable law that would require a contrary result.

The Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 13) and DENIES Plaintiffs' Motion for Summary Judgment. ECF No. 16.

IT IS SO ORDERED

/s/ John J. McConnell, Jr.

John J. McConnell, Jr.
United States District Judge

July 8, 2019

10